UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAWN PARKER,

Plaintiff,

-v-

EQUINOX HOLDINGS, INC., *et al.*,
Defendants.

20-CV-3306 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Equinox Holdings terminated Dawn Parker from her position as a fitness instructor for violating its workplace nonviolence policy.  Parker initiated this action against Equinox, related corporate entities, and two individuals who managed Parker or were involved in her termination.  Parker claimed (1) that she had suffered discrimination and wrongful retaliation under Title VII of the Civil Rights Act of 1964; (2) that she had been subjected to a hostile work environment in violation of 42 U.S.C. § 1981; and (3) that her manager, Michael Neresian, and Equinox human resources director Stephanie Herrmann were liable to her personally under New York State and New York City antidiscrimination laws.  Before the Court is Defendants' joint motion for summary judgment under Federal Rule of Civil Procedure 56.  For the reasons that follow, Defendants' motion is granted.

I.     **Background**

A.     **Factual Background**

The following facts are undisputed except where otherwise noted.  Defendant Equinox Holdings, Inc. ("Equinox") is a fitness club company.  (ECF No. 110 ("SOF") ¶ 1.)  Equinox maintains a policy prohibiting any actual or threatened violence in the workplace to ensure that it is providing a safe, violence-free workplace for the safety of its employees and members.  (*Id.*)

Equinox also maintains policies, pursuant to its status as an Equal Opportunity Employer, prohibiting unlawful discrimination, harassment, and retaliation.  (SOF ¶ 3.)

Plaintiff Dawn Parker ("Parker" or "Plaintiff"), a Black woman, was employed by Equinox as a Group Fitness Instructor from December 4, 2006, until July 19, 2019.  (SOF ¶ 4; ECF No. 102-5 ("Parker Dep.") at 60:1-60:20.)  Parker testified that during her 13 years there, she was generally highly regarded by her supervisors.  (ECF No. 105-1 ("Parker Decl.") ¶¶ 5, 10.)  On July 13, 2019, Parker taught two classes at Equinox's East 63rd Street location (the "Club"), which ended at or before 6:30 PM, and then remained at the Club to work out until the Club closed at 9:00 PM.  (SOF ¶¶ 5 – 6.)  Consistent with its standard procedure, Equinox announced that showers at the Club close 15 minutes before the Club itself does; after the announcement, no one, including Equinox staff, is permitted to use the showers.  (SOF ¶¶ 7 – 10.)  Parker testified that she heard the 15-minute warning announcement that the showers were closed.  (SOF ¶ 11.)  But after hearing the announcement, Parker "ran back to the shower area" and "took a chance" on showering after the announcement because she wanted to avoid being late to a personal engagement.  (SOF ¶ 12.)

The parties agree that when two custodial workers tried to remove Parker from the shower, some sort of confrontation or altercation among the three ensued (though the parties dispute facts such as who was the aggressor).  (SOF ¶¶ 16 – 34.)

On July 19, 2019, Equinox representatives notified Parker that she had been terminated. (SOF ¶¶ 60 – 61.)  Specifically, Parker learned that she had been terminated for violating Equinox's workplace violence policy based on an investigation into an incident involving Parker which occurred between 8:45 PM and 9:00 PM on July 13, 2019, in the Equinox showers, after they had closed.  (SOF ¶¶ 59 – 61.)

The investigation generated contested accounts of the incident.  The investigation found that, after the announcement that the showers were closed but while Parker was showering, a member of the janitorial staff, Cynthia Sanchez-Torres ("Sanchez"), opened the door to Parker's stall and told her, in essence, to leave.  (SOF ¶ 16.)  Parker did not do so, and, shortly thereafter, Nelly Machuca ("Machuca"), the maintenance manager on duty, also opened the shower door and told Parker that the showers were closed.  (SOF ¶¶ 18 – 19.)  Machuca reported, and the investigation found credible, that, during their interaction, Parker had used physical force upon exiting the shower, pushing Machuca and bruising her arm.  (SOF ¶ 23.)  Parker maintains that she never physically touched Machuca, but Parker does admit to pushing on either side of the door with Machuca.  (SOF ¶ 22.)

The parties agree that, shortly after Parker's exit from the shower, Machuca left the locker room and went to seek assistance from a front desk associate, Sara Procario ("Procario").  (SOF ¶ 24.)  Machuca informed Procario that there had been an incident in the women's locker room at the Club.  (SOF ¶ 25.)  In her deposition testimony, Procario further stated that a Club member approached Procario and stated that, while the member enjoyed Parker's fitness classes, she believed that Parker had treated the maintenance employees "very poorly."  (SOF ¶ 27.)  After Parker left the locker room, Procario approached Parker to discuss this issue, accompanied by, at least, Machuca.  (SOF ¶ 28.)  In that conversation, Parker did inform Procario that she was told not to shower, but that she had done so because she was staff.  (SOF ¶ 29.)  Procario and Machuca both testified that Parker was yelling, waving her hands proximately to Procario's face, and cursing.  Parker testified that it was Machuca who was acting in this manner.  (SOF ¶ 30.)

Parker was interviewed by Defendants Stephanie Herrmann, Equinox human resources director ("Herrmann"), and Michael Neresian, Equinox general manager ("Neresian").  Parker

was informed that the reason for her discharge was that she had been found to have violated Equinox's nonviolence policy by pushing Machuca and/or Sanchez during their altercation. Since the altercation and the interview that followed, Parker has consistently maintained that she did not physically touch anyone but, rather, was herself the subject of racial discrimination.

### B.    Procedural History

On April 28, 2020, Parker initiated this action by filing the operative Complaint.  (*See* ECF No. 1 ("Compl").)  Parker named as Defendants the following entities:  Equinox; Equinox Group Inc.; Equinox 44th Street Inc.; Equinox 63rd Street, Inc.; Equinox 74th Street Inc.; Equinox 76th Street Inc; Equinox Rockefeller Center, Inc.; Equinox Columbus Centre Inc.; Equinox One Park Ave Inc.; EQX Holdings, LLC; Brooklyn Heights Equinox; and Related Equinox Holdings II, LLC (together, the "Entity Defendants").  (*Id.*)  Parker also named Neresian and Herrmann individually (together, "Personal Defendants").  (*Id.*)

The Complaint raised four causes of action.  First, Parker asserted a Title VII discrimination claim against the Entity Defendants.  (Compl. ¶¶ 51 – 58.)  Second, Parker asserted a Title VII retaliation claim against the Entity Defendants.  (Compl. ¶¶ 59 – 65.)  Third, Parker asserted a New York State Human Rights Law ("NYHRL") claim against the Personal Defendants.  (Compl. ¶¶ 66 – 70.)  Fourth, Parker asserted a claim under the New York City Human Rights Law ("NYCHLR") against the Personal Defendants.  (Compl. ¶¶ 71 – 75.)  Finally, Parker raised a Section 1981 hostile work environment claim against all Defendants. (Compl. ¶¶ 76 – 80.)  The parties proceeded to discovery.  Now, all Defendants jointly move for summary judgment on all claims under Federal Rule 56.  (ECF No. 100.)

## II.    Legal Standard

To survive summary judgment, a nonmovant must raise a genuine issue of material fact. Fed. R. Civ. P. 56(c).  To raise such an issue requires "more than simply show[ing] that there is

some metaphysical doubt as to the material facts." *Caldarola v. Calabrese*, 298 F.3d 156, 160

(2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986).  Moreover, a nonmovant "may not rely on conclusory allegations or unsubstantiated

speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal

citations omitted).  Rather, they "must offer some hard evidence showing that [their] version of

the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.

1998).  The movant can prevail if, after discovery, "there is no genuine issue as to any material

fact" such that a reasonable juror could find for the opposition. *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986).  If the movant does produce evidence tending to exclude the possibility of

a genuine dispute of material fact, "the nonmoving party must come forward with 'specific facts

showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R.

Civ. P. 56(e)) (emphasis in original).

## III.    Discussion

### A.    Discrimination

In considering summary judgment in Title VII and Section 1981 cases, the Second

Circuit has instructed lower courts to "analyze race discrimination claims under the three-step

*McDonnell Douglas* burden-shifting framework." *Fletcher v. ABM Building Value*, 775 Fed.

App'x 8, 12 (2d Cir. 2019) (gathering cases).  At the first step, "an employee must present a

prima facie case of discrimination." *Id.*  If Parker carries her burden of establishing a prima facie

case, then, at step two, the "burden shifts to the [Defendants] to give a legitimate, non-

discriminatory reason for its actions." *Id.* (quoting *Kirkland v. Cablevision Sys.*, 760 F.3d 223,

225 (2d Cir. 2014)).  If the Defendants establish a legitimate, nondiscriminatory reason for their

actions, then the Court must grant them summary judgment unless, at step three, Parker carries

"the burden of 'show[ing] that the employer's explanation is a pretext for . . . discrimination" against a protected class. *Fletcher*, 775 Fed. App'x at 12 (quoting *Kirkland*, 760 F.3d at 225).

### 1.    Plaintiff's *Prima Facie* Case

At step one, Parker must present a prima facie case that she experienced race discrimination.  To establish her prima facie case, Parker must demonstrate "that (1) she fell within the protected . . . [class], (2) she was qualified for the position, (3) that she was experienced adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2015).

Defendants do not contest elements 1, 2, or 3.[1]  (ECF No. 103 ("Def. Memo.") at 6 – 8.) Defendants challenge the fourth element, arguing that Parker has failed to adduce evidence supporting an "inference of discrimination."  (*Id.*)  According to Defendants, because Parker has failed to produce a non-Black employee similarly situated "in all material respects" as a

---

[1] Because Parker's opposition does not raise any claim of adverse employment action other than her termination, the Court assumes this element satisfied.  (*See* Opp. at 10 – 17.) However, to the extent that Parker may have intended to raise separate claims based on injuries sustained in the lead-up to her termination, these claims are dismissed because no other event described save termination constitutes a materially adverse employment action as a matter of law. *See Williams v. R.H. Donnelly, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) ("To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.").  Any claim based on Equinox's failure to conduct, in Parker's view, an adequate and full investigation of the incident fails as a matter of law, and the Court grants summary judgment as to the failure to investigate allegations, standing alone. *Summit v. Equinox Holdings, Inc.*, No. 20-CV-4905 (PAE), 2022 WL 2872273, at *16 (S.D.N.Y. July 21, 2022) (involving same workplace anti-violence policy, same human resources coordinator, and an Equinox location in New York City, holding that "[a]lthough [plaintiff] is well within his rights to critique Equinox's investigation as hasty and as arguably disrespectful . . . [,] the issue before the Court [in a Title VII discrimination case] is not . . . the wisdom of [Equinox's] termination decision" but rather "whether that decisional process . . . is indicative of . . . discrimination").

comparator to draw the inference that Parker was fired based on her race, Parker fails as a matter of law to make out the causation element. (Def. Memo. at 7.)

With exceptions not raised here, disparate treatment will ordinarily "only give rise to an inference of discrimination when a plaintiff shows 'that [she] was similarly situated in all material respects to the individuals with whom [she] seeks to compare [herself]." *Beharry v. City of New York*, No. 18-CV-2042 (AJN), 2020 WL 6135147, *9 (S.D.N.Y. Oct. 19, 2020) (Nathan, J.) (quoting *Ferraro v. N.Y.C. Dep't of Educ.*, 404 F. Supp. 3d 691, 712 (E.D.N.Y. 2017)).  While Parker is "not obligated to show disparate treatment of an *identically* situated employee," to sustain this summary judgment burden, she must, "[a]t the very least, . . . show that [she] and [her] comparator[] were 'subject to the same workplace standards' in such a way as to 'allow for a reasonably close resemblance of facts and circumstances.'" *Beharry*, 2020 WL 6135147, at *9 (internal citations omitted).

Parker does identify a hypothetical comparator, but she fails to sustain her burden of adducing evidence permitting a reasonable juror to find Parker and her comparator similarly situated in all material respects.  In her Complaint, Parker locates the comparator as the "pool girl," as identified in the Complaint, who, according to Parker's deposition but no other evidence, represented herself as an employee of Equinox who was likewise showering after the showers had closed, but was treated better than Parker because the purported female pool worker was white.[2]  (Opp. at 15 – 16.)

---

[2] As Defendants point out, there is potential ambiguity on this point:  In her Complaint, Parker identified "pool girl" as having "olive/fair skin" (ECF No. 1 ¶ 37), but in her opposition, Parker identifies "pool girl" as "white."  (Opp. at 1.)  The Court need not resolve this ambiguity for reasons explained below.

However, neither Plaintiff nor Defendants have been able to identify the purported comparator.  (SOF ¶¶ 55 – 58.)  The only record evidence indicates that Neresian and his subordinates engaged in extensive efforts to locate and identify the "pool girl," which Parker does not contest.  (SOF ¶ 57.)  Those efforts did uncover payroll records and swipe card access records, which indicate that no other female employees were working in the relevant part of the Club on July 19, 2019, in the evening.  (SOF ¶¶ 57 – 58.)  Additionally, Machuca testified that only one individual entered the shower area after Parker that evening — a member who had seen Parker showering, but she was apologetic after being told that the showers were closed.  (SOF ¶ 21.)  Though Plaintiff generally casts aspersions on Machuca's testimony, Plaintiff does not purport to produce any specifically countervailing evidence about this aspect of her testimony.

This individual is an insufficient comparator for three reasons.  First, Parker concedes by silence that the purported comparator was not an employee of Equinox:  Defendants' production strongly suggests this purported comparator is no comparator at all, and Plaintiff does not cite countervailing evidence.  Therefore, she has failed to meet her burden of showing that Parker and the purported comparator were subject to the same workplace standards, since they were not employees of the same workplace.  (Opp. at 12 (citation omitted).)

Second, even if this individual were similar with respect to employment, no record evidence suggests that the purported pool worker was subject to termination for breach of the workplace nonviolence policy.  Rather, the similarities between the "pool girl" and Parker start and end because both were disrupted by cleaning staff while showering in violation of the gym's rules.  But Defendants' argument is not that Parker was terminated because she showered too late in the evening.  Rather, the comparison fails because only Parker was terminated as a result of having purportedly become violent with a coworker.

Third, there is a paucity of record evidence about the purported comparator, leaving essential, basic questions unaddressed.  Parker's purported comparator is never identified by name and was never interviewed, and there is nothing except Parker's allegation establishing that the individual identified in the Complaint as "pool girl" ever was employed by Equinox.  In her opposition, Parker does not cite any "admissible evidence . . . show[ing] circumstances that would be sufficient to permit a rational finder of fact to infer that [Equinox's] employment decision was more likely than not based . . . on discrimination," a core evidentiary requirement. *Kirkland*, 760 F.3d at 225.  Plaintiff is correct that "[w]hether or not this other woman was an employee [of Equinox] is a question of fact" (Opp. at 15), but it is a factual question with respect to which, at summary judgment, Parker must produce at least some evidence permitting a reasonable juror to find in her favor.  Because "Plaintiff has not done so here," Defendants are entitled to summary judgment.  *Beharry*, 2020 WL 6135147, at *12.  The record evidence suggests that the pool worker, if she exists, was not an employee of Equinox at all.

Parker has not produced evidence giving rise to a genuine dispute as to whether any employee who engaged in similar behavior was not similarly discharged.  Because Parker fails to carry her prima facie burden of producing admissible evidence to permit a comparison between her and a non-Black employee who was similarly situated to Parker, Defendants are entitled to summary judgment on the Title VII and Section 1981 discrimination claims.  "[C]it[ing] to [her] mistreatment and ask[ing] the [C]ourt to conclude that it must have been related to [her] race," cannot satisfy the inference of discrimination element.  *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001).

## 2.     Defendants' Legitimate Nondiscriminatory Reason

Assuming *arguendo* that Parker has sufficiently presented a prima facie case, the Court now considers step two in the *McDonnell Douglas* framework.  "The second step in the

*McDonnell Douglas* analysis inquires whether the defendant has put forward 'a legitimate, nondiscriminatory reason' for the challenged actions." *Beharry*, 2020 WL 6135147, at *12 (quoting *Tx. Dep't Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 – 54 (1981)).

Defendants argue that the legitimate, nondiscriminatory reason for Parker's termination is that she was found to have violated Equinox's workplace non-violence policy.  (Def. Memo at 9 – 11.)  Parker responds by disputing the accuracy and honesty of Equinox's investigation after the alleged incident.  (Opp. at 14 – 17.)  But Plaintiff's response does not rejoin Defendant's showing at step two.  While possibly relevant at step three in assessing whether the proffered explanation was pretextual, it is irrelevant at step two, which turns on the Defendants' *production* of a legitimate reason for termination.  The second step simply inquires whether a legitimate, nondiscriminatory reason exists.  Indeed, "[t]o clear this step, the defendant[s] need not persuade the court that it was actually motivated by the proffered reasons," merely that there exists "a genuine issue of fact as to whether it discriminated against the plaintiff."  *Beharry*, 2020 WL 6135147, at *12 (quoting *Burdine*, 450 U.S. at 253 – 54 (1981)).

Here, Defendants have demonstrated a legitimate, non-discriminatory reason — an investigation, presumed to have been conducted in good faith and according to normal procedures, found that Parker violated Equinox's workplace nonviolence policy.  *See Summit*, 2022 WL 2872273, at *12 ("It is well established that a violation of a workplace violence policy constitutes a legitimate, nondiscriminatory reason for an employee's termination.")  The Court concludes that Equinox's production "is sufficient to discharge [Defendants] of [their] burden of production under the second prong, and shifts the burden back to [Parker] to demonstrate that th[e] proffered reason was a pretext for [race] discrimination."  *Fu v. Consol. Edison Co. of N.Y., Inc.*, 855 Fed. App'x 787, 790 (2d Cir. 2021) (internal quotation marks and citation omitted).

### 3.   Pretext

"[T]he third step requires the Court to determine whether [Parker] has created a genuine issue of fact with respect to whether [Equinox's] proffered reason was in fact pretext for discrimination."  *Beharry*, 2020 WL 6135147, at *12 (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015)) (cleaned up).  The Court understands Plaintiff to make two arguments here: first, that Machado, Sanchez, and/or Procario fabricated the allegations of Parker being violent; and second, that an inference of pretext is independently supported by Herrmann, Neresian, and other evidence relating to Sanchez's witness statement.  The Court addresses these points in turn.

#### a.   Parker's Claim that Machado, Procario, or Other Equinox Employees Fabricated the Incident Report

Parker's theory of pretext is that the incident and investigation were both fabricated and rigged against her, that she never violated Equinox's workplace nonviolence policy, and that any conclusion otherwise must be pretextual for discrimination based on her race.  (Opp. at 16.)  First, Parker argues that, because Machuca was in the wrong when she disrupted Parker's shower and was concerned that Parker would initiate disciplinary actions against her, Machuca fabricated the incident, enlisting at least Procario to assist her.  As Parker stated in her deposition, "I admit I was wrong for having taken a shower after the announcement was made, but if anybody's head's going to roll, it's going to be [Sanchez's and/or Machuca] because they violated me in numerous ways that night in the locker room. . . . And so it was either them or me.  And . . . [their story is] a lie."  (Parker Dep. at 199:15-199:25.)

Even if Parker's production were sufficient to establish these premises, Parker's argument would still fail.  As the cases cited by Parker suggest, there is a presumption against granting summary judgment when a plaintiff satisfies its prima facie showing.  However, Parker

overlooks that this presumption shifts in favor of summary judgment once the employer satisfies step two by establishing a legitimate nondiscriminatory reason.  In that situation, defendants are "entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding" that Parker's violation of the nonviolence policy was pretext for racial discrimination.  *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).  And in evaluating this evidence at summary judgment, the Second Circuit has *also* instructed courts to "be careful not to second-guess an employer's business judgment."  *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1226 (2d Cir. 1994).  To protect that judgment, the Second Circuit requires that, "to show pretext, a plaintiff must show that the defendant's nondiscriminatory reason is not credible *and* that 'it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision.'"  *Howell*, 2016 WL 880373, at *5 (quoting *Gallo*, 22 F.3d at 1225 – 26).  Because Parker has failed to produce evidence from which a reasonable juror could find that the investigation was conducted in dereliction of normal procedures or in bad faith, Defendants are entitled to summary judgment.

> **b.**     **Parker's Claim that Herrmann, Neresian, or Others Forged Witness Statements in the Investigation or Discovery**

Parker also argues that, in addition to some or all of the Defendants' fabricating the initial policy violation incident report, some or all Defendants (including the personal Defendants Neresian and Herrmann) "forged" an inculpatory witness statement.  (Opp. at 15 – 17.)  This deceit, Parker claims, shows that the investigation was not conducted in good faith but was part of "Defendants' . . . course of dishonesty," which supports a broader inference of pretext.  (Opp. at 16.)  According to Parker, "Equinox's outlandish forgery of the statement attributed to Sanchez discredits all of the Defendants, which makes the inference of pretext . . . stronger."  (Opp. at 17.)

Parker's forgery claims fail both because they are unsupported by the record and because, even if they were supported, they would not suffice to carry her summary judgment burden. Aside from conclusory assertions, the evidence Parker cites is one email sent from Herrmann (a regional HR director at Equinox) to Neresian (the general manager of the Club). Herrmann sent the email (the "Herrmann Email") two days after the incident, on July 15, 2023. The recipients were Neresian and Adam Gecht ("Gecht"), an Equinox employee involved in the investigation but not named as a Defendant. (ECF No. 105-3 at 4.)

In the preceding email thread, Herrmann, Neresian, and Gecht discussed the need to resolve the Parker matter promptly because she would be paid in full for her suspension without working, causing the business to lose money. (ECF No. 105-3 at 2 – 4.) At 5:05 PM on July 15, when the Herrmann Email was sent, Neresian had obtained permission to suspend Parker on the basis of Machudo's report pending a full investigation; the investigators had not yet interviewed Sanchez, Procario, or Parker, but Defendants were actively preparing to interview Parker. (*Id.*) In full, Herrmann wrote:

> Lets [sic] try to get this wrapped up asap. We have the one statement [Machado's] but right now that's just a she said she said situation until we can get the other statements [confirming the initial report]. I'll pull together the line of questioning [for Dawn's investigative interview] based on what we know but we'll need the additional statements to warrant separation *assuming those statements confirm the incident reported by the MOD* [that is, by Machado].

(ECF No. 105-3 at 2 (emphasis added).) Parker's argument is that production of the Herrmann Email alone is sufficient to survive summary judgment because it shows Herrmann directing Neresian to forge a witness statement confirming Machuca's account and attribute it to Sanchez. (Opp. at 16 – 17.)

No reasonable juror could read the Herrmann Email as, in Parker's words, evidence of Herrmann "urgently and unequivocally direct[ing] her subordinate to" forge a witness statement.

(Opp. at 12.)  Herrmann made any "separation" contingent on the other witness statements corroborating Machuca's, not the other way around.  And Herrmann did so clearly, stating that the Email "assum[ed] those [other] statements confirm the incident" as it was initially reported to management.  (ECF No. 105-3 at 2; Opp. at 12.)

Parker responds that, even if her construction of the Herrmann Email is not persuasive, the inference of forgery is bolstered by Sanchez's deposition testimony that Sanchez "did not write the statement . . .[ ,] expressed bewilderment at the fact that it was attributed to her and unequivocally stated that nobody ever pushed or otherwise aggressed against her in any Equinox facilities."  (Opp. at 16.)  This response is also unpersuasive.  Parker omits that Defendants have never represented that Sanchez handwrote her statement herself and, moreover, that Machuca identified Sanchez's statement and testified that she personally transcribed Sanchez's statement.  (ECF 102-8 ("Machuca Dep.") at 55:21 – 56:2.)  Additionally, nothing in Sanchez's testimony supports Parker's assertion that she denied that any incident like this ever happened to her while employed at Equinox.  In fact, Sanchez testified that she did not know because she generally could not remember the events of July 2019 when she was deposed three years later, in August 2022.  (*See* ECF No. 105-2 ("Sanchez Dep.") at 14:22-15:4. 17:2-18:12, 24:3-19:1; 29:2-20:1.)  Parker fails to satisfy her burden of production on pretext because no record evidence permits a reasonable inference that any Defendant participated in the forging of Sanchez's investigation statements.

However, even if Parker had some reasonable evidentiary basis to charge Defendants and their lawyers with forgery, the argument would still fail as a matter of law.  Again, even if Parker's attacks on the investigation are assumed true, Parker satisfies only the first of these requirements — this would merely be evidence that the nondiscriminatory reason offered by

Defendants is not credible.  It is not the sort of evidence that permits an inference satisfying the second requirement — that there is some reasonable basis for finding it more likely than not that *racial discrimination* was the reason for the termination decision rather than a policy violation. Even if Parker were correct that the investigation's finding of her guilt was in fact erroneous, the evidence to that effect "is irrelevant unless [she] provides evidence suggesting that the *actual* bas[is] w[as] discrimination against [her] protected class." *Howell*, 2016 WL 880373, at *6 (internal citation omitted).

Pretextual termination does not give rise to liability under the civil rights laws in the abstract; that pretext must have reasonably served to camouflage racial discrimination.[3]  That is especially the case here because Parker was "terminated for misconduct," which means that the question to resolve is "not 'whether the employer reached a correct conclusion in attributing fault [to Parker] . . . . but whether the employer made a good-faith business determination.'" *Koleskinow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 111 (S.D.N.Y. 2009) (quoting *Baur v. Rosenberg, Minc, Falkoff & Wolff*, No. 07-CV-8835 (GEL), 2008 WL 5110976, at *5 (S.D.N.Y. Dec. 2, 2008); *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff.  We are interested in what motivated the employer . . . ." (emphasis in original) (internal quotation omitted)).

---

[3] Put differently, all of Parker's arguments rely on the assumption that her violation *vel non* of the workplace nonviolence policy is dispositive, but that assumption is misguided because "[t]he mere existence of a factual dispute concerning the correctness of [Defendants' investigation's] factual findings is not sufficient to defeat summary judgment . . . ." *Oteng-Amoako v. HSBC Bank USA*, No. 13-CV-5760 (PAC), 2014 WL 7476239, at *6 – 7 (S.D.N.Y. Dec. 30, 2014), *report and recommendation adopted*, 2015 WL 2399847 (S.D.N.Y. May 19, 2015).

Parker has failed to point to any evidence that would permit a reasonable factfinder to find that Parker's termination for violation of the nonviolence rule was a pretext for unlawful discrimination.  In *Roge v. NYP Holdings,* the Second Circuit held that it does not matter whether wrongdoing on the part of an employee-plaintiff "actually occurred," only whether the employer was motivated by its good faith belief in the suspected wrongdoing when it terminated the employee.  257 F.3d 164, 169 – 70 (2d Cir. 2001) (upholding summary judgment when a plaintiff had "not offered any evidence that the [defendant]'s justification, even if pretextual, served as pretext for . . . discrimination").  It is well established that the courts in this circuit must "not second-guess an employer's personnel decision, so long as those decisions are not based on . . . racial discrimination." *Martinez v. Davis Polk & Wardell LLP*, 713 Fed. App'x 53, 56 (2d Cir. 2017 ) (summary order) (citing *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001)).  And while Plaintiff has attempted to attack the investigation and decision process leading to her termination, "these aspects of the company's decisional process, even if debatable, do not reveal a triable issue of [race] discrimination." *Summit*, 2022 WL 2872273, at *16.

All of Parker's other attempts to satisfy her evidentiary burden reiterate conclusory assertions in the complaint and in her deposition. *See Beharry*, 2017 WL 4402436, at *13 (holding that restating conclusory allegations of discrimination from the complaint is insufficient to meet plaintiff's summary judgment burden).  But these allegations remain conclusory and unsubstantiated after discovery and "cannot be considered as evidence" at the summary judgment stage. *Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, 2009 WL 1564144, at *1 n.1 (S.D.N.Y. June 4, 2009) (citing *Colon v. Coughlin*, 58 F.2d 865, 872 (2d Cir. 1995)).

In any event, Parker has not produced evidence suggesting that the investigation was anything but standard or from which a reasonable juror could infer bad faith on the part of the investigators.  Rather, the record supports that the employer relied on its standard employee disciplinary process.  Following Equinox's protocols in like situations, the investigation found that Parker had violated a policy against workplace violence by physically attacking her coworker.  Even if it is false that Parker physically pushed the coworker, that is not evidence that the reason for Parker's termination was unlawful discrimination her race.  It may be evidence of a poor or shoddy process, but an imperfect investigatory process is not covered by the civil rights laws unless it suggests unlawful discrimination.

In conclusion, Defendants have proffered a legitimate, nondiscriminatory reason for Parker's termination:  Parker was terminated because an investigation following Equinox protocols concluded that she had violated Equinox's workplace nonviolence policy when she pushed and yelled at other staff members on July 13, 2019.  Parker fails to offer evidence suggesting that this investigation was problematic, but more important, she offers no evidence that would permit a juror to find pretext for race-based discrimination.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 512 (1993) (stating that "[o]nly one unfamiliar with [the Supreme Court's] case law" could believe Title VII attached to any pretextual termination, disconnected from evidence of pretext of racial animus).

### 4.    Stereotyping

In her opposition (but not explicitly in her Complaint), Parker asserts a claim of racially discriminatory stereotyping.  Specifically, Parker argues that "the evidence suggests that Defendants endorsed Machuca's allegations and terminated Plaintiff based on the pernicious 'Angry Black Woman' stereotype."  (Opp. at 17 (internal citations omitted).)

The premise of the argument is that, since the result of the investigation concluded that Parker engaged in violence, Defendants necessarily stereotyped Parker as an "Angry Black Woman."  Parker cites cases in which an employer's prior statements invoking sex-based stereotypes were deemed sufficient to support an inference of discriminatory intent under Title VII.  (Opp. at 17.)  These are all cases in which an employer's prior expressions of racist and stereotypical beliefs was considered probative that a later termination was motivated by race. (*See* Opp. at 17 ("[Stereotyped *remarks* can certainly be evidence that [race] played a part in an adverse employment decision." (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 119 (2d Cir. 2004) (emphasis added))).)  Here, however, Parker does not identify any such stereotypical remark by anyone with authority over Parker or who was involved in the adverse employment action.  The cases cited by Parker are therefore inapposite.  In fact, Parker cites no statement made by any employee or agent of Equinox that would arguably evidence Defendants' motive or intent as superimposing "anger" onto the Plaintiff as a Black woman, instead assuming that Defendants *must* have been operating under this stereotypical assumption in order to discharge Parker.  This is insufficient at summary judgment.  *See Milord-Francois v. New York State Office of Medicaid Inspector Gen.*, No. 19-CV-0179 (LJL), 2020 WL 5659438, at *22 (S.D.N.Y. Sept. 23. 2020), *rev'd in part on other grounds*, 2022 WL 480477, at *3 (2d Cir. Feb. 17, 2022), (holding that testimony which is "itself conclusory" is "insufficiently probative of whether the [stereotype] comments were uttered sufficiently often" to sustain liability).

For the reasons explained above, Defendants were entitled to rely on their investigation, and no evidence supports a reasonable finding that that Defendants' actions were pretext for racial discrimination.  The same conclusion applies with respect to Parker's stereotyping claim

because she has not produced evidence, as opposed to speculation, that such stereotyping was operative here.

### B.      Retaliation

Like the analysis above, whether raised "[u]nder Title VII [or] § 1981, retaliation claims are generally evaluated under the *McDonnell Douglas* burden-shifting framework." *Fletcher*, 775 Fed. App'x at 14. Parker argues that the failure to fully investigate her claims and her eventual termination were adverse employment actions which occurred proximate in time to her engagement in Title VII protected activities. (Opp. at 11 – 13.)

### 1.      Plaintiff's Prima Facie Case

To satisfy her initial burden on a retaliation claim, Parker "must first establish a *prima facie* case of retaliation by showing that: '(1) she engaged in a protected activity; (2) her employer was aware of the activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Gonzales v. NYU Langone Hosps.*, No. 18-CV-1797, 2021 WL 4226042, at *5 (S.D.N.Y. Sept. 16, 2021) (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013)).

Plaintiff satisfies the first three elements. Plaintiff engaged in protected activity when she initiated a complaint process alleging racial discrimination; since she made complaints to her supervisors, it follows that her employer was "aware" of the protected activity. *See Summa¸*708 F.3d at 125.

Parker's termination is a materially adverse employment action for purposes of applying the *McDonnell Douglas* test because the only actual "disciplinary action" taken against Parker was her firing. *See id.* (failure to investigate plaintiff's allegations of retaliation for complaints about racial discrimination not a materially adverse employment action); *see also Weeks v. N.Y. State Div. of Parole*, 273 F.3d 76, 86 (2d Cir. 2001), *abrogated on other grounds*, *Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (holding that multiple notices of discipline sent to plaintiff for incidents plaintiff claimed were fabricated were not materially adverse employment actions because they did not create a materially adverse change in her working conditions, such as termination or diminution of responsibilities). To the extent that Parker seeks to rely on a failure to adequately investigate Parker's claims of race discrimination against Machuca for reporting the incident, though, that is not a sufficient adverse employment action to survive summary judgment. *See Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) ("An employee whose complaint is not investigated cannot be said to have . . . suffered punishment for bringing that same complaint.").

The fourth element of a retaliation claim is causation. "Title VII claims require 'but-for causation,' *i.e.*, 'proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Gonzalez*, 2021 WL 4226042, at *5 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). Plaintiffs may establish causation either "indirectly, by showing that the protected activity was followed closely by discriminatory treatment. . . or [] directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (internal citations omitted).

Parker's own deposition testimony contradicts the thesis of her retaliation claim. That testimony repudiated retaliation on the basis of Title VII protected activity:

> Q: Do you think that Cynthia retaliated against you because you reported race discrimination?
>
> A: At that point, she didn't know what I reported.
>
> Q: What about Nelly; did she retaliate against you because you reported race discrimination?
>
> A: No, I don't believe so. . . .

Q:  Do you think Michael Neresian retaliated against you because . . . you made a complaint of race discrimination?

A: No.

Q: Do you think Stephanie Herrmann retaliated against you because you made a complaint of race discrimination?

A: No.

Q: Do you think Sara Procario retaliated against you because you made a complaint of race discrimination?

A: No.

Q: Do you think any employees at Equinox retaliated against you because you made a complaint of race discrimination?

A:  No.

(Parker Dep. at 200:3-201:13.)  At another point in the same deposition, Parker admitted that, less than one year before her termination, she was involved in an altercation with another employee, who violated the workplace nonviolence policy by grabbing Parker's arm.  (SOF ¶ 71.)  Following an investigation of Parker's allegation, Equinox informed Parker that this employee had been terminated.  (SOF ¶ 72.)  This further supports Defendants' evidence of a pattern: that when Equinox believes employees violated it nonviolence policy, it discharges the violators.

Parker stated that although she believed there may have been some retaliation in the colloquial sense of that term related to her termination, she does not believe her termination to have occurred "because of" her filing a complaint alleging race discrimination.  In this situation, courts routinely recognize this sort of deposition testimony as, at minimum, highly probative and in some instances as sufficient to warrant summary judgment.  *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 454 – 55 (2d Cir. 1999) (holding that "a party may not create an issue of fact

[under Federal Rule 56] by submitting an affidavit in opposition to a summary judgment motion that . . . contradicts the affiant's previous deposition testimony" (internal citations omitted)).

Plaintiff's response is that other indicia support reasonable inferences of culpability. (Opp. at 15.)  Even if Plaintiff is right about this, it would mean that the Court's role is to weigh those indicia against other factors — including Plaintiff's own statements, which are exculpatory as to retaliation.  *See Placide-Eugene v. Visiting Nurse Serv. N.Y.*, 86 F. Supp. 3d 132, 148 – 50 (E.D.N.Y. 2015) (granting summary judgment because "Plaintiff's attempt to recant [a] portion of her [deposition] testimony . . . 'runs into the well-established rule in this circuit that a party may not evade summary judgment by proffering an affidavit (or declaration) that directly contradicts the affiant's prior deposition testimony" (quoting *Edge Grp. WAICCS LLC v. Sapir Grp. LLC*, 705 F. Supp. 2d 304, 320 (S.D.N.Y.2010)) (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104 (2d Cir.2010))).

Rather than engage on this point, Parker "minimizes the import of [her] admission[s]." *Placide-Eugene*, 86 F. Supp. 3d at 148.  Although Parker is correct that "the ultimate determination of discrimination rests with[]" the jury, "it does not follow that [Parker's] perceptions are not relevant to whether a genuine issue of material fact exists on [a Title VII] claim." *Id.* at 148.  Parker thus fails to show a genuine issue of material fact exists to merit a jury trial on her retaliation claim.

In any event, Parker's purported evidence of causation is based on events that took place *after* the initiation of the investigation leading to her discharge.  Parker, moreover, does not dispute that termination is a clearly stated potential penalty for employees found in violation of Equinox's nonviolence policy.  (SOF ¶¶ 1 – 3.)  The evidence cited by Parker fails to support a reasonable inference of causation.  *See United States v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d

365, 404 (S.D.N.Y. 2018) ("It is axiomatic that an adverse employment action cannot serve as the basis for a retaliation claim if the retaliatory action took place prior to the protected activity."); *see also Martinez*, 713 Fed. App'x at 57 (affirming summary retaliation claim where negative performance reviews preceded Title VII protected activity).

### 2.      Defendant's Legitimate, Nondiscriminatory Reason

Assuming *arguendo* that Parker satisfied her initial burden, the Court considers steps two and three.  As explained above, Defendants satisfy their step-two burden because they have "articulated a legitimate, non-discriminatory reason for terminating [Parker] – her violation of company policy." *Fletcher*, 775 Fed. App'x at 14.  At this stage of the retaliation analysis, Defendant's burden is merely "one of production, not persuasion," and Defendants have produced a legitimate, nondiscriminatory reason. *See Reeves*, 530 U.S. at 142.

### 3.      Pretext

The burden shifts back to Parker, who must now establish that her termination occurred because she engaged in protected activity.  *Univ. Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 358 – 59); *see also Kwan v. Andalex Group LLC*, 737 F.3d 834, 852 (2d Cir. 2013) (holding plaintiff must adduce evidence supporting reasonable finding that plaintiff's protected activity was the 'but for' reason for employee's termination).  At this step, Parker bears the burden not only of production but also "the burden of persuasion that the proffered reason is a pretext." *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015) (internal citations omitted).

Parker does not satisfy her burden.  As to her burden of production, Equinox had "legitimate, nondiscriminatory reasons to terminate [Parker]'s employment" but Parker "offers no evidence — aside from further conclusory allegations and unsubstantiated speculation — that Defendant's offered reason is a pretext." *Gonzales*, 2021 WL 4226042, at *7.  As she did at step one, Parker seeks to rely on a temporal inference based on the proximity of the charges of racial

discrimination to her termination.  (Opp. at 14.)  The temporal proximity of these events may satisfy step-one causality, but it fails to carry the related but more exacting step-three causality requirement that Parker show that the adverse employment actions would not have occurred but for her protected activities.  Parker has "presented no direct evidence of retaliation to show that her termination 'would not have occurred in the absence of the retaliatory motive' and at step three, unlike the prima facie stage, she cannot rely on the inferences of timing alone" to survive summary judgment.  *Fu*, 855 Fed. App'x at 791 (quoting *Kwan*, 737 F.3d at 845 – 47).  Because Plaintiff fails to carry the burden of production, she also fails to carry the burden of persuasion.

### C.    Hostile Work Environment

Parker's Complaint asserts a claim of hostile work environment under Section 1981, alleging that her treatment by Defendants, from the incident in the shower to her termination, shows that Defendants "intentionally . . . created a hostile work environment" and had "established a policy or practice of harassing . . . African American employees."  (Compl. ¶¶ 76 – 80.)  Defendants are entitled to summary judgment on the hostile work environment claim.  First, while raised in the Complaint, Plaintiffs appear to have jettisoned this claim at summary judgment because they do not address it in their briefs, thus conceding Defendants' arguments for dismissal of the claim.  (Def. Memo. at 12 – 15.)

In any event, the undisputed evidence does not support a hostile environment claim.  "To establish a hostile work environment claim, 'a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Fletcher*, 775 Fed. App'x at 13 (quoting *Raspardo v. Carlone¸* 770 F.3d 97, 114 (2d Cir. 2014).

On that standard, Parker's hostile work environment claim, which is premised on a single incident, is insufficient to show sufficient permeation.  Parker has not presented any evidence from which a jury could reasonably conclude that the discriminatory intimidation, ridicule, and insults were sufficiently severe or pervasive to alter the conditions of her employment.  While "[t]here is no 'mathematically precise test' . . . for deciding whether an incident . . . is sufficiently severe or pervasive to alter the conditions" of the work environment, to survive summary judgment, "[t]he incidents complained of 'must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  *Raspardo*, 770 F.3d at 114 (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).  The record is insufficient to support a reasonable inference of "permeation" of discrimination.  *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014).  Parker complains of one incident over the course of 18 years working at Equinox, a number well below other cases in which Southern District court have granted summary judgment for want of permeation.  *See Stembridge v. City of New York*, 88 F. Supp. 2d 276, 286 (S.D.N.Y. 2000) (holding seven instances over three years of far more egregious, probative, and explicit statements to a plaintiff of unequivocal racial animus, including repeated use of racial slur, not sufficient to show permeation at summary judgment).  Even assuming the evidence produced by Parker sufficed to show racially disparate treatment (which, for reasons explained above, it does not), it would still be insufficient to show that the Club was "permeated" with severe or pervasive discriminatory conditions.

### D.     NYCHRL and NYSHRL

Having dismissed Parker's federal claims, the Court declines to exercise supplemental jurisdiction over her outstanding claims arising under state and local law.  *See In re Merrill Lynch LP Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (per curiam) ("[W]hen the federal claims are dismissed[,] the 'state claims should be dismissed as well.'" (quoting *United Mine Workers v.*

*Gibbs*, 383 U.S. 715, 726 (1966)).  Accordingly, Plaintiff's NYCHRL and NYSHRL claims are dismissed without prejudice to refiling.

**IV.     Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to close the motion at ECF Number 100, to enter judgment in favor of Defendants, and to close this case.

SO ORDERED.

Dated: September 20, 2023
       New York, New York

_____
J. PAUL OETKEN
United States District Judge